Lorianne G. Conklin Bar No. 213344
SHOOK, HARDY & BACON L.L.P.
333 Bush Street, Suite 600
San Francisco, California 94104-2828
Telephone: (415) 544-1900
Facsimile: (415) 391-0281

Harvey L. Kaplan [*pro hac vice*]
SHOOK, HARDY & BACON L.L.P.
One Kansas City Place
1200 Main Street
Kansas City, Missouri 64105-2118
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

Attorneys for Defendant
G.D. SEARLE LLC (formerly known as
G.D. SEARLE & CO.)

ORIGINAL FILED

MAR 2 1 2003

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA ROBINSON,<br><br>    Plaintiff,<br><br>    vs.<br><br>G.D. SEARLE & COMPANY, a corporation; and DOES ONE THROUGH ONE HUNDRED, inclusive,<br><br>    Defendant. | Case No. C-01-4195 CW (JCS)<br><br>**DEFENDANT'S NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date: May 9, 2003<br>Time: 10:00 a.m.<br>Dept.: Courtroom 2<br>Judge: Hon. Claudia Wilkin |

## NOTICE OF MOTION AND MOTION

Defendant G.D. Searle L.L.C. ("Searle") moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the ground that Plaintiff cannot establish causation, an element essential to each of her claims. Accordingly, Searle seeks judgment as a matter of law on the Complaint in its entirety. This motion will be heard on May 9, 2003, at 10:00 a.m.

///

## POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. STATEMENT OF ISSUE TO BE DECIDED

Plaintiff Laura Robinson alleges that she took the FDA-approved prescription drug Ambien® (zolpidem tartrate). (Complaint at ¶1, attached as Ex. A to Conklin Decl.) Her Complaint alleges five theories of liability: (1) Strict Liability–Defective Product; (2) Negligence; (3) Breach of Implied Warranty; (4) Breach of Express Warranty; and (5) Fraud. *Id.* The issue to be decided is whether Defendant is entitled to summary judgment on the ground that Plaintiff cannot establish causation, an essential element to each of her claims, where:

   1. Plaintiff has failed to disclose any expert witnesses pursuant to Rule 26 and the Court's scheduling order; and/or

   2. Plaintiff's own admissions establish that the condition of which she complains existed before she allegedly took Ambien®.

### II. STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff was obligated to disclose the identities and reports of expert witnesses by February 21, 2003. *See* Minute Order and Case Management Order dated 3/20/02, attached as Ex. B to Conklin Decl. The Court's order followed the Joint Proposed Case Management Order, signed and submitted by both Plaintiff's and Defendant's counsel on March 6, 2002. *See* Conklin Decl. at ¶4; Joint Proposed Case Management Order, attached as Ex. C to Conklin Decl. The joint proposal followed the Rule 26(f) conference between counsel, at which time they agreed upon these dates. *See* Conklin Decl. at ¶4.

Plaintiff, however, has failed to disclose experts or provide reports by, on, or since that date. *Id.* at ¶5. Plaintiff never sought an extension of her expert disclosure deadline, even though defense counsel twice notified Plaintiff's counsel of the missed deadline, the second time asking that Plaintiff voluntarily dismiss the case for lack of causation. *See* Conklin Decl. ¶6; Letters dated 2/24/03 and 3/6/03 from L. Conklin to B. Ripley, attached as Exs. D and E to Conklin Decl. Plaintiff's counsel's belated explanation that there was an "implicit" agreement that expert disclosure dates had been extended with the fact discovery deadline is supported by neither facts nor

1 law; and, in any event, Plaintiff still did nothing to comply with the deadline once she learned it had
2 passed. *See* Conklin Decl. at ¶7; Letter dated 3/8/03 from B. Ripley to L. Conklin, attached as Ex. F
3 to Conklin Decl.; Letter dated 3/10/03 from L. Conklin to B. Ripley, attached as Ex. G to Conklin
4 Decl.

5       Plaintiff brings this action claiming that Ambien® caused her to experience a semi-
6 permanent to permanent severe sleep condition. (Complaint at ¶1, attached as Ex. A to Conklin
7 Decl.; Deposition of Laura Robinson ("Plaintiff's Depo.") at 24:13-40:8, attached as Ex. H to
8 Conklin Decl.) She testified that her condition is known as "delayed phase sleep disorder," which
9 she explained as her body's natural sleep rhythm being different than the average person's. (*Id.* at
10 42:14-23.) Dr. Joanna Cooper, a neurologist who treated Plaintiff for her difficulties sleeping from
11 September 11, 1998, until at least November 2000 (Plaintiff's Depo. at 192:15-20), testified that she
12 thought Plaintiff had "severe phase-delay disorder," which she described as "her clock was out of
13 sync – her biological clock was out of sync – with dark and light cycles." (Deposition of Dr. Joanna
14 ("Cooper Depo.") at 10:5-7, attached as Ex. I to Conklin Decl.) Dr. Cooper also thought Plaintiff
15 had "psychophysiological insomnia", which is "when a person can't fall asleep because they're so
16 worried about the quality of their sleep or the lack thereof. It's essentially a self-perpetuating
17 proposition." (*Id.* at 11:2-12:13.)

18       Plaintiff's condition is life-long and familial. (Cooper Depo. at 11:11-22; *see also* Plaintiff's
19 Depo. at 42:1-47.) As a child, Plaintiff spent hours awake in bed every night. (Plaintiff's Depo. at
20 43:8-11.) In college and in law school, she was able to schedule her classes to fit her schedule of
21 falling asleep around 1 to 2 a.m. and waking 8 to 10 hours later. (*Id.* at 66:11-68:23.) Plaintiff's
22 mother and maternal grandmother have similar conditions. (*Id.* at 48:7-50:14; *see also* Cooper
23 Depo. at 11:15-22 (In some of the circadian rhythm disorders, there may be a genetic component and
24 Plaintiff reported that her mother had the same problem.)

25       In 1988, Plaintiff began working as a public defender at the Contra Costa County Public
26 Defender's Office. (Plaintiff's Depo. at 24:13-40:8.) She worked from 8:30 a.m. until 5:00 p.m. and
27 "pretty much worked during [her] waking hours" when she was in trial. (*Id.*) Plaintiff stopped
28 working on November 8, 2000, and she went on long-term disability with Contra Costa County

beginning January 7, 2001, which paid her 85% of her salary (i.e., $8,032.06 per month).[1] (*See* Long-Term Disability Benefit Notification, attached as Ex. J to Conklin Decl.)

Plaintiff claims that she took Ambien® intermittently between July 26, 2000, and November 13, 2000. (Response to Interrogatory No. 11, attached as Ex. K to Conklin Decl.) She complains that Ambien® caused her to be unable to sleep for more than four hours a night. (Plaintiff's Depo. at 149:6-9, attached as Ex. H to Conklin Decl.) She claims she now has a greater difficulty initiating sleep and suffers from early morning awakenings, which she has never had before. (*Id.* at 196:25-197:10, 198:1-3.) Plaintiff described these problems to Dr. Cooper as follows.

> "No matter what I take to put me to sleep, I wake up in 4-5 hours and have an extremely difficult time, if not an impossible time going back to sleep." (E-mail dated 10/18/00 from Plaintiff to Dr. J. Cooper, attached as Ex. A to Cooper Decl.)

Dr. Cooper, however, produced E-mail correspondence she received from Plaintiff reflecting the very same complaints <u>over a year</u> before Plaintiff claims she first took Ambien®. In June and July of 1999, Plaintiff complained to Dr. Cooper:

- "After taking restoril[2] and waking up at 4 a.m., after at most only 4 hours of sleep, there's no way I'll ever take restoril again. Since April, I've been waking up every couple of hours, but generally still manage to eventually return to sleep. But restoril actually wakes me up without ever letting me go back." (E-mail dated 7/15/99 from Plaintiff to Dr. J. Cooper, attached as Ex. A to Cooper Decl.)

- "Whether I take a benzodiazapem[3] (sic) or not, I'm waking up after only a couple of hours of sleep every morning. I never used to be like this. What do you think is happening?" (E-mail dated 6/16/99 from Plaintiff to Dr. J. Cooper, attached as Ex. A to Cooper Decl.)

---

[1] Although Plaintiff applied for Social Security Disability, her request was denied. (Plaintiff's Depo. at 176:17-185:16.) The most recent information in Defendant's possession is that she was appealing this decision. *Id.*

[2] Restoril (temazepam) is a prescription drug indicated for the short-term treatment of insomnia.

[3] Benzodiazepines are sedative-hypnotic agents, such as Restoril (temazepam).

In November 2000, while Plaintiff was allegedly taking Ambien®, she blamed the prescription antidepressant Remeron (mirtazepine) – and expressly ruled out Ambien® – for these alleged difficulties:

> "Since the summer, my delayed sleep problems have escalated into early morning wakings without abatement. That all started when I was on remeron and **before I even began** effexor, vistaril or **ambien**." (E-mail dated 11/02/00 from Plaintiff to Dr. J. Cooper, attached as Ex. A to Cooper Decl.) (Emphasis added.)

### III. SUMMARY OF THE ARGUMENT

Plaintiff has, without substantial justification, failed to disclose any experts or to supply Defendant with the expert information required by Federal Rule 26 on or before February 21, 2003, as required by the Court's March 20, 2002 Order (attached to the Conklin Declaration at as Ex. B.) As a consequence, Plaintiff should be precluded from offering expert testimony at trial, which forecloses the possibility that she could establish causation. Furthermore, Plaintiff cannot establish causation because Plaintiff's own admissions expressly negate causation. Accordingly, Defendant is entitled to summary judgment.

### IV. STANDARD FOR SUMMARY JUDGMENT

A defendant is entitled to summary judgment where there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See* Federal Rules of Civil Procedure 56(c). Far from being a "disfavored procedural shortcut," summary judgment is a useful tool for disposing of insubstantial claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Causation is a question of law where under undisputed facts, reasonable minds could not differ. *See Iolab Corp. v. Seaboard Sur. Co.* 15 F.3d 1500, 1506 n.4 (9th Cir. 1994), *superceded by statute on other grounds.* Summary judgment is appropriate in such cases. *See Delbon Radiology v. Turlock Diagnostic Ctr.*, 839 F. Supp. 1388, 1391 (E.D. Cal. 1993).

In ruling on a motion for summary judgment, the court construes the material facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nonetheless,

> [w]hen the moving party has carried its burden under Rule 56(c), . . . the nonmoving party must come forward with specific facts showing that there is a <u>genuine issue for trial</u>. . . . Where the record taken as a

whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

*Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1985) (quotations and footnote omitted) (emphasis in original); *see also, Anderson*, 477 U.S. at 256 (party opposing properly supported summary judgment motion may not rest upon pleading but must instead set forth specific facts that show that there is a genuine issue for trial). Defendants may satisfy their summary judgment burden simply by demonstrating that Plaintiff has insufficient evidence to support her claims:

> [D]efendant's motion for summary judgment faces a lighter burden. Because the defendant does not bear the burden of proof at trial, the defendant need only point to the insufficiency of the plaintiff's evidence to shift the burden to the plaintiff to raise genuine issues of fact as to each claim by substantive evidence.

*First Pacific Networks, Inc. v. Atlantic Mut. Ins. Co.*, 891 F. Supp. 510, 513 (N.D. Cal. 1995). In other words, "[u]nder the federal standard, a moving defendant may shift the burden of producing evidence to the non-moving plaintiff merely by 'showing' – that is, pointing out through argument – the absence of evidence to support plaintiff's claim." *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

When the Court analyzes the undisputed facts of this case, the applicable law set forth below and the standards applicable to summary procedure, it will be clear that Plaintiff cannot maintain her claim that Ambien® caused the injuries she alleges. Accordingly, summary judgment in favor of Defendants should be granted.

## V. ARGUMENT

Plaintiff cannot carry her burden of proving that her use of Ambien® caused her to develop any new or unique sleep disorder. Plaintiff should be precluded from offering expert testimony at trial, which forecloses the possibility that she could establish causation. Furthermore, summary judgment is appropriate because Plaintiff's own admissions expressly negate causation.

### A. Plaintiff Must Prove, Through Admissible Expert Testimony, That Ambien® Caused Her Alleged Injuries.

Plaintiff cannot succeed on her personal injury claim without proving that Ambien® was a substantial factor in bringing about the sleep problems from which she claims to suffer[4]. In a personal injury action such as this one, involving potentially complex medical issues, a plaintiff must prove causation by means of expert testimony. *See Kennedy v. Collagen Corporation*, 161 F.3d 1226, 1230 (9th Cir. 1998) (California law provides substantive standard governing proof of causation in personal injury case, and requires expert testimony respecting personal injury allegedly resulting from multiple injections of collagen produce "within a reasonable medical probability"); *Jones v. Ortho Pharm. Corp.*, 163 Cal. App. 3d 396, 402 (1985) ("[I]n a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony"). Summary judgment is proper where a plaintiff fails to come forward with such expert testimony. *See Hickman*, 1999 WL 606690 at *9.

In *Hickman*, a product liability action involving many of the same causes of action as this case, the plaintiff disclosed two physicians as expert witnesses on the issue of causation. *Id.* at *8. Pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Court excluded their testimony because the experts were not sufficiently qualified and had not employed scientifically reliable methodologies in reaching their opinions. Without expert evidence on causation, there was no genuine issue of material fact as to causation, and the Court granted defendants' motion for summary judgment on all claims. *See also Sanderson v. Int'l Flavors and Fragrances, Inc.*, 950 F. Supp. 981, 985 (C.D. Cal. 1996) (summary judgment granted where plaintiff failed to present any admissible expert testimony sufficient to show that defendants' products were a substantial factor in injuring her).

---

[4] *See Lineaweaver v. Plant Insulation Co.*, 31 Cal. App. 4th 1409, 1414–15 (1995); *see also Romito v. Red Plastic Co.*, 38 Cal. App. 4th 59 (1995) (proof of causation required in product liability action under both negligence and strict liability theories); *Sparks v. Owens-Illinois, Inc.*, 32 Cal. App. 4th 461, 462 (1995) (strict liability claim requires proof of causation); *Hickman v. Sofamor-Danek Group, Inc.*, No. C95-01095 CW, 1999 WL 606690, at *7 (N.D. Cal. Feb. 17, 1999) (proof of causation required for breach of warranty and false representation claims).

**B. Plaintiff Failed To Disclose Any Experts As Required By Rule 26(a)(2) And This Court's Case Management Order, And Thus Will Not Be Able To Meet Her Burden Of Proof As To Causation.**

A party is required to disclose the identity of all persons expected to give expert testimony at trial, and (if retained or specially employed) such persons must also submit a written report. *See* Fed. R. Civ. P. 26(a)(2). These disclosures must be made at the times and in the sequence directed by the court. Fed. R. Civ. P. 26(a)(2)(C). Failure to do so without substantial justification warrants exclusion of the expert testimony unless the party can show its failure was harmless. *See* Fed. R. Civ. P. 37(c)(1); *see, e.g., Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008–09 (8th Cir. 1998) (applying Rule 37(c)(1) to exclude expert testimony); *Continental Lab Prods., Inc. v. Medax Int'l, Inc.*, 195 F.R.D. 675, 676–77 (S.D. Cal. 2000) (same); *Ruhland v. Walter Kidde Portable Equip., Inc.*, 179 F.R.D. 246, 248–51 (W.D. Wis. 1998) (same); *see also Quevedo v. Trans-Pacific Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998) (affirming exclusion of plaintiff's expert testimony because of unjustified failure to comply with disclosure deadline affirmed).[5] Here, Plaintiff should be precluded from offering expert witnesses testimony at trial.

The Court ordered that Plaintiff disclose the identities and reports of expert witnesses by February 21, 2003. *See* Minute Order and Case Management Order dated 3/20/02, attached as Ex. B to Conklin Decl. Plaintiff, however, has continuously failed to disclose any experts or provide any reports by, on, or since that date, even though defense counsel has twice raised the issue of the missed deadline and explained that causation cannot be established without expert testimony. *See* Conklin Decl. at ¶5; Letter dated 2/24/03 from L. Conklin to B. Ripley, attached as Ex. D to Conklin Decl.; Letter dated 3/6/03 from L. Conklin to B. Ripley, attached as Ex. E to Conklin Decl.

As a result, Plaintiff should be precluded from presenting any expert testimony on—among other things—the essential element of causation. In *Quevedo*, the Ninth Circuit affirmed the Northern District court's exclusion of plaintiff's expert testimony where the plaintiff's expert

---

[5] Rule 37(c)(1) has been described as a "self-executing sanction . . . designed to provide a 'strong inducement for disclosure.'" *See Carney v. Kmart Corp.*, 176 F.R.D. 227, 229 (S.D.W. Va. 1997) (quoting Adv. Comm. Note). It is "self-executing" in the sense that a complaining party need not bring a separate motion to enforce it, but may raise the issue in a summary judgment motion. *See* 1993 Adv. Comm. Note to Rule 37(c) (specifically referring to Rule 56).

disclosure was 20 days late, the plaintiff never sought an extension of time from the Court, and the plaintiff did not provide expert statements or reports until he submitted his opposition to the defendant's summary judgment motion. 143 F.3d at 1258. Here too, Plaintiff's disclosures are more than 20 days late, Plaintiff has not sought an extension from the Court, and has not provided expert statements or reports prior to opposing Defendant's summary judgment motion. *See* Conklin Decl. at ¶5.

Plaintiff's counsel's *ad hoc* implausible explanation that there was an agreement to extend the expert disclosure deadline "implicit" in the parties' agreement to extend the fact witness discovery deadline should be rejected. *See* Letter dated 3/8/03 from B. Ripley to L. Conklin, attached as Ex. F to Conklin Decl. Plaintiff never raised the issue of extending the expert deadline with defense counsel and, moreover, movement of that deadline would require a Court order, which Plaintiff never sought. *See* Conklin Decl. ¶5; Local Rule 6-2. Both Plaintiff (an attorney) and her counsel should have been aware of this, and even after defense counsel promptly confirmed this to Plaintiff's counsel, Plaintiff has yet to do <u>anything</u> to comply with the deadline. *See* Conklin Decl. at ¶7; Letter dated 3/10/03 from L. Conklin to B. Ripley, attached as Ex. G to Conklin Decl.

Without expert testimony, Plaintiff's case must fail for lack of a triable issue regarding causation. "A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other factors immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Hickman*, 1999 WL at *9–10 (granting summary judgment due to lack of admissible expert testimony as to causation); *Ruhland*, 179 F.R.D. at 251 (same); *Trost*, 162 F.3d at 1009–10 (same result where there was a lack of expert testimony that the product was unreasonably dangerous). Defendants are therefore entitled to summary judgment as to this action.[6]

---

[6] Plaintiff has been treated by a physician specializing in sleep disorders – Dr. Jed Black, Director of the Stanford Sleep Disorders Clinic. Although Defendant has begun taking the deposition of Dr. Black as a treating physician, Dr. Black has not been disclosed as an expert retained by Plaintiff. Furthermore, Dr. Black testified that there is no evidence establishing a connection between Ambien® to any long-term or permanent sleep condition. (*See* Deposition of Dr. Jed Black at 49:22-55:18, attached as Ex. L to Conklin Decl.) Thus, Dr. Black would not help Plaintiff meet her burden, even if he was retained and disclosed as an expert in this case.

C. **Summary Judgment Should Be Granted Because Plaintiff's Own Admissions Negate Causation.**

Plaintiff cannot establish causation in this case because the uncontroverted evidence establishes that Ambien® was not a substantial factor in causing her alleged injuries; by her own admission, Plaintiff's alleged condition arose long before her alleged use of Ambien®.

As Plaintiff testified, she has suffered from a sleep disorder all her life. (Plaintiff's Depo. at 42:1-47:21.) However, Plaintiff claims that she developed a different form of sleep disorder from taking Ambien®, which she alleges she took between July 26 and November 13, 2000 (Response to Interrogatory No. 11, attached as Ex. K to Conklin Decl.) She complains that Ambien® caused her to be unable to sleep for more than four hours a night. (Plaintiff's Depo. at 149:6-9, attached as Ex. H to Conklin Decl.) She claims she now has a greater difficulty initiating sleep and suffers from early morning awakenings, which she has never had before. (*Id.* at 196:25-197:10, 198:1-3.)

Plaintiff, however, complained that she was unable to sleep for more than four hours a night, and of early morning awakenings, long before Ambien® was first prescribed for her. Dr. Joanna Cooper, a neurologist who began treating Plaintiff for her difficulties sleeping on September 11, 1998, produced E-mail correspondence from Plaintiff reflecting these very same complaints on June 16 and July 15, 1999, more than a year before Ambien® was prescribed for her on July 26, 2000:

- "After taking restoril and waking up at 4 a.m., after at most only 4 hours of sleep, there's no way I'll ever take restoril again. **Since April [1999] I've been waking up every couple of hours**, but generally still manage to eventually return to sleep. **But restoril actually wakes me up without ever letting me go back**." (E-mail dated 7/15/99 from Plaintiff to Dr. J. Cooper, attached as Ex. A to Cooper Decl.) (Emphasis added.)

- "Whether I take a benzodiazapem (sic) or not, **I'm waking up after only a couple of hours of sleep every morning**. I never used to be like this. What do you think is happening?" (E-mail dated 6/16/99 from Plaintiff to Dr. J. Cooper, attached as Ex. A to Cooper Decl.)

In an email dated October 18, 2000, to Dr. Cooper, Plaintiff described the condition she complains resulted from Ambien® in virtually identical terms: "No matter what I take to put me to sleep, **I wake up in 4-5 hours and have an extremely difficult time, if not an impossible time going back to sleep**." (E-mail dated 10/18/00 from Plaintiff to Dr. J. Cooper, attached as Ex. A to Cooper Decl.)

Not only do Plaintiff's own emails of June and July of 1999 demonstrate that she had these same complaints before she took Ambien®, another email to Dr. Cooper on November 2, 2000, expressly relates the onset of these symptoms to a time before she began taking Ambien®:

> "Since the summer, my delayed sleep problems have escalated into early morning wakings without abatement. That all started when I was on remeron[7] and **before I even began** effexor, vistaril or **ambien**." (E-mail dated 11/02/00 from Plaintiff to Dr. J. Cooper, attached as Ex. A to Cooper Decl.) (Emphasis added.)

Plaintiff's own admissions establish that the condition of which she complains existed long before she took Ambien®; thus, Ambien® could not have been a substantial factor in causing her alleged injuries. Thus, as a matter of law, Defendant cannot be liable to Plaintiff. Where under the undisputed facts reasonable minds cannot differ, causation is a question of law and summary judgment is appropriate. *See Iolab Corp. v. Seaboard Sur. Co.* 15 F.3d 1500, 1506 n.4 (9th Cir. 1994), *superceded by statute on other grounds*; *Delbon Radiology v. Turlock Diagnostic Ctr.*, 839 F. Supp. 1388, 1391 (E.D. Cal. 1993). Accordingly, the Court should grant summary judgment in Defendant's favor.

---

[7] Medical record reflect that Plaintiff was taking Remeron for sleep on October 27, 1999, that she was taking Remeron on July 17, 2000, and that she wanted off of Remeron on July 20, 2000. *See* Berkeley Orthpaedic Medical Group Knee Patient Information, Bates No. strtz 015, attached as Ex. M to Conklin Decl.; Office Visit Note dated 7/17/00, Bates No. ebay I 007, attached as Ex. N to Conklin Decl.; Office Visit Note dated 7/20/00, Bates No. ebay N 006 attached as Ex. O to Conklin Decl.;

## VI. CONCLUSION

Plaintiff cannot establish causation, an element essential to each claim she asserts in this action. She has not timely disclosed any expert witnesses to testify as to causation and, moreover, the uncontroverted evidence expressly negates causation. Accordingly, The Court should grant summary judgment to Defendant.

Dated: March 21, 2003.

Shook, Hardy & Bacon L.L.P.

By: *Lorianne Conklin*
Lorianne G. Conklin

Attorneys For Defendant G.D. Searle LLC (formerly known as G.D. Searle & Co.)

56350v3

12

DEF'S NOTICE OF MOTION, MOTION AND MEMO OF POINTS AND AUTHORITIES
CASE NO. C-01-4195 CW (JCS)