1   Lorianne G. Conklin Bar No. 213344
    SHOOK, HARDY & BACON L.L.P.
2   333 Bush Street, Suite 600
    San Francisco, California 94104-2828
3   Telephone:     (415) 544-1900
    Facsimile:     (415) 391-0281
4
    Harvey L. Kaplan [*pro hac vice*]
5   SHOOK, HARDY & BACON L.L.P.
    One Kansas City Place
6   1200 Main Street
    Kansas City, Missouri 64105-2118
7   Telephone:     (816) 474-6550
    Facsimile:     (816) 421-5547
8   Attorneys for Defendant
    G.D. SEARLE LLC (formerly known as
9   G.D. SEARLE & CO.)

10

11                  IN THE UNITED STATES DISTRICT COURT

12              FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

14   LAURA ROBINSON,                    Case No. C-01-4195 CW  (JCS)
                                         **SUPPLEMENTAL BRIEF IN SUPPORT**
15            Plaintiff,                 **DEFENDANT'S MOTION FOR**
                                         **SUMMARY JUDGMENT**
16        vs.

17   G.D. SEARLE & COMPANY, a corporation;
     and DOES ONE THROUGH ONE
18   HUNDRED, inclusive,

19            Defendant.

20

21

22

23

24

25

26

27

28

1257128v2

## PRELIMINARY STATEMENT

On May 12, 2003, this Court ordered the parties to submit supplemental briefing on the reliability of Dr. Jed Black's causation opinion under Rule 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Although Plaintiff implies that Defendant inappropriately raised these issues for the first time in its Reply Brief (Plaintiff's Further Memorandum at 1:26-2:1), this was due to Plaintiff's failure to timely designate experts and was in response to her last-minute attempt to "mint" the testimony of one of her treating physicians into an expert opinion on the issue of causation.[1]

Plaintiff has now had an opportunity to respond to the issues raised in Defendant's Reply Brief, but she has failed to establish the reliability of Dr. Black's opinion regarding causation under Rule 702 and *Daubert*. Defendant's Supplemental Brief summarizes the relevant facts and law that establish that Dr. Black's opinion regarding causation is unreliable and, therefore, inadmissible.[2]

## SUMMARY OF RELEVANT FACTS

The following facts are uncontroverted by Plaintiff:

1.     Plaintiff has a life-long personal and family history of sleep disorders, dating back to her "earliest memory." (Plaintiff's Depo. at 42:1-11, attached as Ex. A to Conklin Supplemental Decl.) Her mother and her maternal great-grandmother also experienced sleep disorders. (*Id.* at 48:15-49:25.)

2.     Plaintiff testified that she has taken numerous prescription medications for insomnia, including birth control pills, flurazepam, trazodone, Klonopin, Neurontin, Melatonin, Elavil, Remeron, nortriptyline, Vistaril, Depakote, Tranxene and Ambien®. (*Id.* at 67:23-68:9; 73:20-74:9;

---

[1] Plaintiff's expert disclosures were due under the Court's Scheduling Order on February 21, 2003, but Plaintiff failed to designate any experts. On March 21, 2003, Defendant filed its Motion for Summary Judgment on the ground that, in the absence of expert testimony on the issue of causation, Plaintiff could not meet her burden of proof on this essential element of her cause of action. Plaintiff informed Defendant on March 28, 2003, after Defendant had filed its Motion for Summary Judgment, that Plaintiff intended to offer the testimony of one of Plaintiff's treating physicians, Dr. Jed Black, as expert opinion on the issue of causation. In its Reply Brief, Defendant established that Dr. Black's opinion is inadmissible as expert testimony under Rule 702 and *Daubert*.

[2] Defendant respectfully reserves the arguments set forth in its original Memorandum in Support of its Motion for Summary Judgment.

1   97:16-20; 153:12-14; 154:1, 6, 10-12, 18-19; 155:6-7; 199:23-200:1.)   In addition, her medical

2   records indicate that, from 1991 to 2003, Plaintiff was also prescribed other medications for

3   insomnia, including Benadryl, chloral hydrate, Donormyl, Nembutal, Seconal, Sonata and Restoril

4   for her insomnia.  (*See* Medical Records, attached as Ex. C to Conklin Supplemental Decl.)   In

5   addition, she was prescribed a number of medications for anxiety and depression, including

6   diazepam, Effexor, imipramine, lorazepam, Ludiomil, Paxil, Prozac, Remeron, Serzone, Trazodone,

7   Wellbutrin and Zoloft.  (*Id.*)

8          3.      Plaintiff claims that her ingestion of Ambien® (zolpidem tartrate), first prescribed for

9   her on July 26, 2000, caused her to develop a "new" sleep disorder, which she described as the

10  inability to sleep for more than a couple of hours at a time and an inability to go back to sleep after

11  awakening.  (Plaintiff's Depo. at 149:7-16; 193:6-194:22 attached as Ex. A to Conklin Supplemental

12  Decl.; Black Depo. at 139:3-14, attached as Ex. B to Conklin Supplemental Decl.)

13         4.      However, **on June 16, 1999, more than one year before Ambien® was first**

14  **prescribed for her, Plaintiff complained of this very same problem** in an e-mail she sent to Dr.

15  Joanna Cooper, who was treating her for sleep disorders.  Plaintiff told Dr. Cooper that, regardless of

16  whether she took a benzodiazapine (a class of sleep medications) or not, **she was unable to sleep for**

17  **more than a couple of hours at a time**.  (E-mail dated 6/16/99 from Plaintiff to Dr. J. Cooper,

18  attached as Ex. A to Cooper Decl., filed with Defendant's Memorandum in Support of Motion for

19  Summary Judgment.)

20         5.      The following month, on July 15, 1999, Plaintiff sent another e-mail to Dr. Cooper

21  complaining of the same problem, i.e., the so-called "new" sleep disorder that is the subject of this

22  lawsuit.  In that e-mail, Plaintiff stated that, **for more than three months she had been unable to**

23  **sleep for more than a couple of hours at a time**, and that, since she began taking Restoril (another

24  sleep medication, known generically as temazepam), **she was unable to go back to sleep after**

25  **awakening.**[3]   (E-mail dated 7/15/99 from Plaintiff to Dr. J. Cooper, attached as Ex. A to Cooper

26  Decl., filed with Defendant's Memorandum in Support of Motion for Summary Judgment.)

27  _____

28          [3] Plaintiff does not dispute the authenticity of the e-mails or the veracity of the content of the
    e-mails; rather, Plaintiff mischaracterizes the e-mails to the Court as having been written "years

6.      Again on November 2, 2000, in yet another e-mail to Dr. Cooper, Plaintiff made it clear that this "new" sleep disorder, i.e., the inability to sleep longer than a few hours and the inability to go back to sleep after awakening, **started before she began taking Effexor, Vistaril or Ambien®**. (E-mail dated 11/02/00 from Plaintiff to Dr. J. Cooper, attached as Ex. A to Cooper Decl., filed with Defendant's Memorandum in Support of Motion for Summary Judgment.)

7.      Dr. Jed Black first saw Plaintiff on January 3, 2001.  (Black Depo. at 136:10-13, attached as Ex. B to Conklin Supplemental Decl.)  The medical history he obtained from Plaintiff mistakenly led him to believe that, before Plaintiff took Ambien®, she had never experienced an inability to sleep for more than a few hours and an inability to go back to sleep after awakening.  Dr. Black testified: "But when she started using Ambien – I mean, she started using it more regularly and developed classic – sort of slept for four hours after dose.  Then was wide awake and couldn't get back to sleep.  **And she had never experienced that before**." (*Id.* at 52:17-21) (emphasis added.) *See also id.* at 136:14-137:13; 139:3-14.

8.      At the time Dr. Black was deposed, Plaintiff had identified him only as one of her treating physicians and not as an expert witness.  Plaintiff identified Dr. Black as an expert witness on March 28, 2003, after Defendant filed its Motion for Summary Judgment.  (*See* Letter dated 3/28/03 from B. Ripley to L. Conklin, attached as Ex. I to Ripley Decl. In Opposition to Defendant's Motion for Summary Judgment.)

9.      Dr. Black believes that all hypnotic agents, including Ambien®, are capable of causing a short-term insomnia which typically resolves within one to two days or, at most, one to two weeks, after the drug has been discontinued.  (Black Depo. at 65:21-70:20, attached as Ex. B to Conklin Supplemental Decl.)

10.     Dr. Black's conclusion that Ambien® was responsible for Plaintiff's "new" sleep disorder, even on a short-term basis, was based on his erroneous belief that this was a **new** sleep disorder that had never occurred before she began taking Ambien®. (*Id.* at 138:21-139:14.)

---

before" she took Ambien®.   (Plaintiff Laura Robinson's Further Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment at 3:21-24.)

SUPPLEMENTAL BRIEF IN SUPPORT OF
DEFENDANT'S MSJ
CASE NO. C-01-4195 CW (JCS)

11.     Dr. Black testified that nobody has ever proven that Ambien® can cause a chronic or permanent sleep disorder. (*Id.* at 49:22-50:4.)

12.     Dr. Black testified that there are no published studies that establish that Ambien® has the capacity to cause chronic or permanent insomnia.[4] (*Id.* at 55:15-24.)

13.     Dr. Black has not personally performed any clinical research nor has he published any studies involving Ambien®. (*Id.* at 18:6-14, 93:15-94:13.)

14.     Dr. Black has not published any opinion he proffers in this case in the peer-reviewed literature. (*Id.* at 17:24-18:1; 93:10-14.)

## SUMMARY OF ARGUMENT

Plaintiff must prove, among other things, general causation and specific causation to recover in this case. *See Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1320-21 (9th Cir. 1995) ("*Daubert II*"). To satisfy her burden of proof, Plaintiff must produce reliable expert testimony. *See Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230 (9th Cir. 1998); *Daubert*, 509 U.S. at 589. Absent such testimony, Defendant is entitled to summary judgment. *See e.g.*, *Claar v. Burlington Northern R.R.*, 29 F.3d 499, 502-03 (9th Cir. 1994).

In this case, Plaintiff can offer no reliable expert testimony to meet her burden of proving general and specific causation.[5] First, with respect to general causation, Plaintiff's expert, Dr. Jed Black, admits that nobody has ever established or proven that Ambien® is capable of causing chronic insomnia. Further, Dr. Black admits that there are no published studies establishing that Ambien® can cause chronic insomnia.

Second, Dr. Black's specific causation opinion is not reliable. While he concluded that, albeit on a short-term basis (i.e., one or two days or at most one to two weeks), Ambien® caused Plaintiff to experience a "new" sleep disorder (i.e., an inability to sleep longer than a few hours and

---

[4] The medical/scientific articles Dr. Black referred to and produced at his deposition only pertain to whether Ambien® can cause acute, or short-term, rebound insomnia. (*See* Articles attached as Exhibit D to Conklin Supplemental Decl.)

[5] The issue addressed in this Supplemental Brief is not Dr. Black's testimony as a treating physician, which is the capacity in which he was deposed. At issue here is Plaintiff's belated effort to save her case from summary judgment for lack of expert testimony regarding causation by attempting to "mint" Dr. Black as an expert.

1   an inability to go back to sleep after awakening), this opinion was based on his erroneous

2   assumption that she experienced this problem for the first time after she began taking Ambien®.

3   However, as Plaintiff has clearly described in her own words in several e-mails she sent to Dr.

4   Joanna Cooper, she had these very same complaints more than one year before she ever took

5   Ambien®.

6        There was no "new" sleep disorder following Ambien®.  It was in fact a condition that pre-

7   existed her use of Ambien®, a variant of her life-long problem with insomnia.  Thus, even Dr.

8   Black's limited causation opinion is unreliable because it is based on an underlying assumption

9   which is not true.  Absent reliable expert opinion testimony concerning the specific cause of

10  Plaintiff's "new" sleep disorder, Plaintiff cannot meet her burden of proof on an essential element of

11  her cause of action; and Defendant is, therefore, entitled to judgment as a matter of law.

12                                **ARGUMENT**

13       Plaintiff cannot succeed on her personal injury claim without reliable expert testimony

14  proving that Ambien® was a substantial factor in bringing about a "new" sleep disorder which she

15  claims arose only after she began using Ambien®.[6]  *See Kennedy*, 161 F.3d at 1230 (California law

16  provides substantive standard governing proof of causation in personal injury case, and requires

17  expert testimony respecting personal injury allegedly resulting from multiple injections of collagen

18  produce "within a reasonable medical probability"); *Jones v. Ortho Pharm. Corp.*, 163 Cal. App. 3d

19  396, 402 (1985) ("[I]n a personal injury action causation must be proven within a reasonable medical

20  probability based upon competent expert testimony").  Summary judgment is proper where a

21  plaintiff fails to come forward with such expert testimony.  *See Hickman v. Sofamor-Danek Group,*

22  *Inc.*, No. C95-01095 CW, 1999 WL 606690, at *9 (N.D. Cal. Feb. 17, 1999).

23       Pursuant to Rule 702, a qualified expert witness may offer an expert opinion if the testimony

24  is based upon sufficient facts or data.  In the context of this case, this requirement is meant to

25  _____

26       [6] *See Lineaweaver v. Plant Insulation Co.*, 31 Cal. App. 4th 1409, 1414–15 (1995); *see also Romito v. Red Plastic Co.*, 38 Cal. App. 4th 59 (1995) (proof of causation required in product

27  liability action under both negligence and strict liability theories); *Sparks v. Owens-Illinois, Inc.*, 32 Cal. App. 4th 461, 462 (1995) (strict liability claim requires proof of causation); *Hickman v.*

28  *Sofamor-Danek Group, Inc.*, No. C95-01095 CW, 1999 WL 606690, at *7 (N.D. Cal. Feb. 17, 1999) (proof of causation required for breach of warranty and false representation claims).

SUPPLEMENTAL BRIEF IN SUPPORT OF
DEFENDANT'S MSJ
CASE NO. C-01-4195 CW (JCS)

1    exclude testimony of an expert who bases a causation opinion on a mistaken belief concerning

2    Plaintiff's relevant medical history.  *See* Fed. R. Evid. 702; *Daubert,* 509 U.S. at 589.  If an expert's

3    opinion testimony is not based on sufficient facts, it is not only unreliable, but also inadmissible

4    under *Daubert*; thus, it cannot be used to defeat a motion for summary judgment.  *See, e.g., Claar*,

5    29 F.3d at 502-03.

6         The Supreme Court has issued a clear mandate that a district court is to act as a "gatekeeper"

7    to "ensure the reliability and relevancy of expert testimony."  *See Kumho Tire Co. Ltd. v.*

8    *Carmichael*, 526 U.S. 137, 152 (1999).  The Court recognized in *Daubert* that it is imperative that a

9    judge exercise more control over the admissibility of expert testimony which is very powerful and

10   can be misleading to a lay jury attempting to evaluate it.  *Daubert*, 509 U.S. at 595.  As the Fifth

11   Circuit has noted, "[u]nder the regime of *Daubert* a district judge asked to admit scientific evidence

12   must determine whether the evidence is genuinely scientific, as distinct from being unscientific

13   speculation offered by a genuine scientist."  *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 278 (5[th]

14   Cir. 1998) (quoting *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996)).

15        The *Moore* opinion is particularly relevant here, where Plaintiff argues that Dr. Black's

16   specific causation opinion should be admitted simply because "Dr. Black's qualifications are beyond

17   reproach" and because he is not "some hired gun."   (Plaintiff Laura Robinson's Further

18   Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary

19   Judgment, at 5:6-8; 6:1-4.)  Defendant has not challenged Dr. Black's qualifications, nor has it

20   suggested he is a "hired gun."  Indeed, at the time of Dr. Black's deposition, Defendant was unaware

21   that Plaintiff intended to offer Dr. Black's testimony to establish causation.  Defendant took Dr.

22   Black's deposition assuming that he was one of Plaintiff's treating physicians, not that he would be

23   offered as an expert on causation.  It was not until after Plaintiff responded to Defendant's Motion

24   for Summary Judgment that Dr. Black was identified as Plaintiff's expert, although no expert report

25   was provided.   In any event, his testimony establishes that his opinion regarding causation is

26   unreliable and inadmissible.

27        As set forth below, Dr. Black's causation opinion is inadmissible because he admits that

28   there is no reliable scientific foundation to conclude that Ambien® can cause chronic insomnia and

1   because there is no factual support for his underlying assumption that Plaintiff had not experienced a

2   "new" sleep disorder, i.e., an inability to sleep for more than a few hours and an inability to go back

3   to sleep after awakening, until she took Ambien®.

**I.      DR. BLACK'S TESTIMONY ESTABLISHES THAT THERE IS NO GENERAL
        CAUSAL RELATIONSHIP BETWEEN AMBIEN® AND CHRONIC INSOMNIA.**

6       Plaintiff cannot prove general causation in this case because there are no facts or data to

7   establish that Ambien® is capable of causing a chronic or permanent sleep disorder.  Specifically,

8   Dr. Black testified that nobody has ever proven that Ambien® can cause a chronic or permanent

9   sleep disorder.  (Black Depo. at 49:22-50:4, attached as Ex. B to Conklin Supplemental Decl.)  Dr.

10  Black admitted that there are no published studies that establish that Ambien® has the capacity to

11  cause chronic or permanent insomnia.  (*Id.* at 55:15-24.)  Dr. Black further admitted that he has not

12  personally performed any clinical research involving Ambien®.  (*See id.* at 18:6-14, 93:15-94:13.)

13  Based on Dr. Black's testimony, it is apparent that Plaintiff cannot meet her burden of proving

14  general causation in this case, i.e., that Ambien® is capable of causing a chronic or permanent sleep

15  condition.

**II.     DR. BLACK'S OPINION REGARDING SPECIFIC CAUSATION RESTS ON AN
        INADEQUATE FACTUAL FOUNDATION.**

18      Plaintiff must establish not only general causation, but also specific causation.  *See Daubert*

19  *II*, 43 F.3d at 1320-21.   In other words, she must show through reliable expert testimony that

20  Ambien®, more probably than not, caused her to develop the "new" disorder of which she

21  complains, i.e., an inability to sleep more than a few hours and an inability to go back to sleep after

22  awakening. *See id.*

23      Dr. Black's specific causation opinion is unreliable because it is not based on sufficient facts

24  or data.  Specifically, the critical fact relied upon by Dr. Black for his specific causation opinion is

25  incorrect.  Dr. Black concluded that Ambien® caused Plaintiff to experience her alleged "new" sleep

26  disorder, i.e., an inability to sleep more than a few hours and inability to go back to sleep after

27  awakening, because he believed that, until she took Ambien®, she had never before experienced this

28  condition.  The truth, as evidenced by Plaintiff's own words in e-mails that she sent to Dr. Cooper,

1   who was treating her for insomnia, is that Plaintiff had experienced the precise condition she now

2   attributes to her Ambien® use more than one year before she took Ambien®.  Thus, she had a pre-

3   existing condition which necessarily negates Ambien® as the cause of this condition.

4       On June 16, 1999, and July 15, 1999, more than one year before Ambien® was first

5   prescribed for Plaintiff (on July 26, 2000), she complained to her treating physician, Dr. Joanna

6   Cooper, of **the very same conditions she now alleges developed after she began taking**

7   **Ambien®**:

8         "Whether I take a benzodiazepem[7] (sic) or not, **I'm waking up after**
      **only a couple of hours of sleep every morning.**  I never used to be

9         like this.  What do you think is happening?"  (E-mail dated 6/16/99
      from Plaintiff to Dr. J. Cooper, attached as Ex. A to Cooper Decl.)

10        (emphasis added)

11        "After taking restoril[8] and waking up at 4 a.m., after at most only 4
      hours of sleep, there's no way I'll ever take restoril again.  **Since April,**

12        **I've been waking up every couple of hours**, but generally still
      manage to eventually return to sleep.  **But restoril actually wakes me**

13        **up without ever letting me go back.**"  (E-mail dated 7/15/99 from
      Plaintiff to Dr. J. Cooper, attached as Ex. A to Cooper Decl.)

14        (emphasis added)

15  Moreover, again on November 2, 2000, in another e-mail to Dr. Cooper, Plaintiff made it clear that

16  her "new" sleep disorder began before she began taking Ambien®:

17        "Since the summer, my delayed sleep problems have escalated into
      early morning wakings without abatement.  That all started when I was

18        on remeron[9] and **before I even began** effexor, vistaril or **ambien**."(E-
      mail dated 11/02/00 from Plaintiff to Dr. J. Cooper, attached as Ex. A

19        to Cooper Decl.) (Emphasis added.)

20      The significance of Plaintiff's e-mail admissions is that she clearly described a pre-existing

21  condition that she now, in the context of litigation, attributes to Ambien®.  A belief that she had

22  

_____

23     [7] Benzodiazepines are sedative-hypnotic agents, such as Restoril (temazepam).

24     [8] Restoril (temazepam) is a prescription drug indicated for the short-term treatment of
insomnia.

25     [9] Medical records reflect that Plaintiff was taking Remeron for sleep on October 27,1999,
that she was taking Remeron on July 17, 2000, and that she wanted off of Remeron on July 20, 2000.

26  *See* Berkeley Orthopedic Medical Group Knee Patient Information, Bates No. strtz 015, attached as
Ex. M to Conklin Decl., filed with Defendant's Memo. In Support of Motion for Summary

27  Judgment; Office Visit Note dated 7/17/00, Bates No. ebay I 007, attached as Ex. N to Conklin
Decl., filed with Defendant's Memo. In Support of Motion for Summary Judgment; Office Visit

28  Note dated 7/20/00, Bates No. ebay N 006 attached as Ex. O to Conklin Decl., filed with
Defendant's Memo. In Support of Motion for Summary Judgment.

1   never experienced an inability to sleep for more than a few hours and an inability to get back to sleep

2   before using Ambien® was fundamental to Dr. Black's causation opinion.  He stated unambiguously

3   that he concluded that Ambien® was the cause of Plaintiff's "new" disorder because he believed she

4   had "never" experienced the same disorder before she took Ambien®.  (Black Depo. at 52:17-21,

5   attached as Ex. B to Conklin Supplemental Decl.)  Thus, he reasoned that there was a temporal

6   relationship between her use of Ambien® and this "new" sleep disorder (classic *post hoc ergo*

7   *propter hoc* reasoning).  He was wrong in this critical assumption.  The Court need not resort to

8   speculation (*See* Plaintiff's Further Memorandum at 3:27-4:2) to find that, because the critical fact

9   relied upon by Dr. Black in reaching his specific causation opinion was completely wrong, his

10  opinion is not based on sufficient facts or data as required by Rule 702 and is, therefore, unreliable.

11          Plaintiff cannot now be heard to argue against summary judgment when **she was the one**

12  who did not bring to Dr. Black's attention the fact that she had experienced an inability to sleep for

13  more than a few hours and an inability to go back to sleep after awakening **before she ever took**

14  **Ambien®**, a fact she corroborated in her e-mails to Dr. Cooper that pre-date this litigation.  Indeed,

15  Defendant only learned of the existence of the e-mails when they were produced by Dr. Cooper at

16  her deposition, following Plaintiff's response to Defendant's request for production of documents

17  and following the depositions of both Plaintiff and Dr. Black.

18          Plaintiff's suggestion that Defendant should now be required to re-depose Dr. Black

19  regarding the significance of Plaintiff's e-mails is merely an attempt by her to repair the irreparable.

20  Defendant should not be required to jump through unnecessary hoops in re-deposing Dr. Black only

21  to ask him to reaffirm his sworn testimony that he believed that there was a temporal relationship

22  between the so-called "new" sleep disorder and Plaintiff's use of Ambien®.   Moreover, Plaintiff's

23  suggestion that this issue is simply one for cross-examination at trial would completely abrogate this

24  Court's role as a gatekeeper in ensuring that the jury is not confused by unscientific speculation

25  cloaked in the aura of expert opinion. *Daubert*, 509 U.S. at 595.

26  ///

27  ///

28  ///

1

## CONCLUSION

2      Causation is an essential element of Plaintiff's cause of action, and it must be established

3   through reliable expert testimony.  Dr. Black's testimony establishes that there is no general causal

4   relationship between Ambien® and chronic insomnia.  Dr. Black's specific causation opinion is

5   unreliable and, therefore, inadmissible because it is based on an erroneous factual assumption.

6   Defendant, therefore, respectfully requests that the Court enter an Order granting its Motion for

7   Summary Judgment and dismissing Plaintiff's claims with prejudice.

8

9   Date:  May 30, 2003.                              SHOOK, HARDY & BACON L.L.P.

10

11

12                                                    By: _Lorianne G. Conklin_____
                                                          Lorianne G. Conklin

13                                                    Attorneys For Defendant
                                                      G.D. SEARLE L.L.C. (formerly known as
14                                                    G.D. SEARLE & CO.)

15

16

17

18

19

20

21

22

23

24

25

26

27

28